NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

_____

## IN RE ADRIANUS JOHANNES AND
## MARIA REIJERS

_____

2014-1052

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 11/718,322.

_____

Decided:  June 5, 2014

_____

TIMOTHY J. ZARLEY, Zarley Law Firm, P.L.C., of Des Moines, Iowa, for appellant.

NATHAN K. KELLEY, Deputy General Counsel for Intellectual Property Law and Solicitor, for appellee.  With him on the brief were MARY L. KELLY and MICHAEL S. FORMAN, Associate Solicitors.

_____

Before PROST,[*] *Chief Judge*, TARANTO and CHEN, *Circuit Judges.*

---

[*]   Sharon Prost assumed the position of Chief Judge on May 31, 2014.

PER CURIAM.

Adrianus Johannes Maria Reijers appeals the decision of the United States Patent and Trademark Office's Board of Patent Appeals and Interferences ("Board") affirming the rejection of four claims of Reijers's patent application. Reijers challenges the Board's finding that independent Claim 11 is anticipated under 35 U.S.C. § 102(b) by U.S. Patent No. 2,211,490 ("Braun").[1]   Because substantial evidence supports the Board's conclusion that Braun anticipates Claim 11, we affirm.

I

Reijers's application claims a method of removing liquid from the surface of a "food strand." The strand is moved through a series of "gas flows" or "gas knives" that blow liquid from the strand. Independent Claim 11 states:

11. Method for removing liquid from the surface of a food product, characterised [*sic*] in that

the food product is supplied as a food strand, which food strand is successively carried through a plurality of gas flows

wherein a supply means for gas is placed adjacently of a transport route of the food product and

---

[1]    The Board also affirmed the Examiner's rejection of dependent Claims 12, 13, and 14. Reijers does not argue that the three dependent claims are patentable if Claim 11 is not. Accordingly, we do not separately address dependent Claims 12, 13, and 14. Those claims fall with Claim 11. *See In re Nielson*, 816 F.2d 1567, 1572 (Fed. Cir. 1987).

the supply means for gas are adapted to generate the plurality of gas flows crossing the transport route successively in the direction of transport

wherein the separate gas flows originate from placed-apart slots to blow liquid from the food product in a number of phases by a number of successive and mutually separated gas knives.

J.A. 32.

The Examiner rejected Claim 11 as anticipated by Braun. Similar to Claim 11 in Reijers's application, the Braun patent claims a method for drying food products. Claim 5 reads:

5. A method of drying tubular structures which comprises inflating a tubular structure with a gas, then passing said tubular structure over a conduit and ejecting a hot gas from openings in said conduit directed towards said tubular structure in order to suspend said tubular structure in said hot gas and thereby dry the same.

Braun, col. 5:33–6:2. As an example of a "tubular structure," Braun describes "artificial sausage skins, from solutions or fibrous masses of vegetable or animal origin." *Id.* col. 1:2–4. Braun further discloses that the claimed conduit "openings" may take the form of "parallel continuous rows of openings separated by a small interval . . . ." *Id.* col. 3:24–26. The pressure of the gas ejected through the openings may be varied depending on the type of tubular product to be dried. *See id.* col. 2:38–46 (contrasting the relatively low minimum pressures needed to dry most tubular products with the higher pressures needed to dry the "special case[]" of "coronary sausage").

In rejecting Claim 11 as anticipated, the Examiner concluded that Braun discloses "a plurality of gas flows"—ejected from "placed-apart slots"—that separately flow "over the sausage food product to dry the sausage."

J.A. 57. Reijers appealed the rejection to the Board, arguing that "Braun does not teach that the openings blow liquid from the product or that the openings represent successive, mutually separate gas knives that blow liquid from the product in phases." J.A. 3. In affirming the Examiner's rejection, the Board found that Braun necessarily would anticipate the claim elements that Reijers argued were not expressly disclosed.

> Braun's openings are in the form of placed-apart slots. These placed-apart slots/openings of Braun, like those recited in claim 11, necessarily would create successive and mutually separated gas knives, and Appellant provides the appeal record with no explanation to the contrary. Likewise, the separate gas flows originating from Braun's slots/openings necessarily would blow liquid from food product in the course of achieving the drying objective desired by Braun. Again, Appellant does not offer a contrary explanation in the record of this appeal.

J.A. 3–4 (internal citations omitted).

Reijers timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## II

Anticipation is a question of fact, as is the subsidiary question of whether a prior art reference discloses—either expressly or inherently—a claim limitation. *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997). We uphold decisions of the Board on factual matters if there is substantial evidence in the record to support the Board's findings. *In re Hyatt*, 211 F.3d 1367, 1372 (Fed. Cir. 2000). A finding is supported by substantial evidence if a reasonable mind might accept that evidence as adequate to support a conclusion. *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

Reijers's principal argument on appeal is that Braun does not disclose a method for blowing liquid from a food product, as required by Claim 11. Reijers argues that "there is no express disclosure in Braun that there is liquid on the surface of the sausage casing." Appellant's Br. 12. Moreover, Reijers contends that Braun "teaches a gentle drying process," not a blowing drying process. Quoting language from Braun's specification, Reijers notes that Braun's gas flows merely "play over" the conveyed casing.

We note that the Board did not find, and the Director need not show, that Braun expressly discloses the blowing of liquid from the surface of a sausage casing. The Board found that "gas flows originating from Braun's slots/openings *necessarily would* blow liquid from food product in the course of achieving the drying objective desired by Braun." J.A. 3–4 (emphasis added). We have long held that such inherent disclosure may serve as a basis for a finding of anticipation. "It is well settled that a prior art reference may anticipate when the claim limitations not expressly found in that reference are nonetheless inherent in it. Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates." *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1349 (Fed. Cir. 2002) (citations and internal quotation marks omitted). Moreover, an inherent disclosure may anticipate a method claim. *See id.*; *see also Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1378 (Fed. Cir. 2005) ("[W]hen considering a prior art method, the anticipation doctrine examines the natural and inherent results in that method without regard to the full recognition of those benefits or characteristics within the art field at the time of the prior art disclosure.").

Based on the disclosures in Braun, we find that sufficient evidence exists for a reasonable mind to conclude that Braun would necessarily blow liquid off a food prod-

uct as part of its drying process. The Board could reasonably conclude that Braun's sausage casings—which, after all, need to be dried—necessarily include the presence of at least some liquid on their surface. And even if Braun did not contemplate using its claimed method specifically for blowing surface liquid off a sausage casing, its disclosure of ejected gas delivered at varying pressures, *see* Braun, col. 2:38–46, supports the Board's conclusion that performing the method would result in blowing liquid off the casing. *See Perricone*, 432 F.3d at 1378.

We find unpersuasive Reijers's arguments to the contrary. Reijers contends that Braun teaches that the ejected gas flows "countercurrent" to the casing. Appellant's Br. 12 (citing Braun, col. 1:45–55). Reijers suggests that a countercurrent gas flow—that is, a flow that moves in the opposite direction as the conveyed casing—would be incapable of blowing liquid off a food product. There are two problems with this argument. First, as the Director points out, Braun elsewhere describes its gas stream as flowing "perpendicular" to the tubular food product. Braun, col. 4:22–32; *see also id.* at Fig. 6. The angle of the ejected gas in Braun appears similar to the angle of the ejected gas described in Reijers's application. *Compare* Braun at Fig. 6, *with* J.A. 130 at Fig. 2. Second, even if Reijers is correct that the gas flow disclosed in Braun runs countercurrent to the casing, Reijers does not explain why such a flow would fail to blow liquid off the casing's surface. Reijers points to language in Braun suggesting that the flow of gas ensures that the casing is not blown away. The fact, however, that the gas flow does not blow away the casing itself does not therefore mean that the flow would not blow away liquid from the surface of the casing.

Reijers also argues that Braun does not teach the use of a food strand; instead, Reijers maintains, Braun discloses only the drying of an artificial sausage skin. This argument, which would require us to construe the claim

term "food strand," was not raised before the Board and we therefore decline to consider it for the first time on appeal. We note that the Examiner was not obligated to construe every claim term when examining Reijers's patent application. *See In re Jung*, 637 F.3d 1356, 1365 (Fed. Cir. 2011) ("There has never been a requirement for an examiner to make an on-the-record claim construction of every term in every rejected claim and to explain every possible difference between the prior art and the claimed invention in order to make out a prima facie rejection.").

For the reasons stated above, the Board's decision is affirmed.

**AFFIRMED**

COSTS

No costs.